*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* TENNY, Minors.

UNPUBLISHED
June 23, 2022

No. 357942
Macomb Circuit Court
Family Division
LC Nos. 2020-000030-NA
2020-000031-NA
2020-000032-NA

Before: MARKEY, P.J., and SHAPIRO and PATEL, JJ.

PER CURIAM.

In this child protective proceeding, respondent-mother appeals by right[1] a trial court order removing the minor children, BT, VT, and ST, from her care and custody and placing them with their legal father. We find that the issues raised are moot because events that occurred after the order was entered have rendered it impossible for this Court to grant relief.

## I. BACKGROUND

### A. PRIOR EVENTS

The Department of Health and Human Services' (DHHS) involvement began in 2014 following allegations that the legal father sexually abused VT and BT. An investigation resulted in criminal charges and a petition to terminate the legal father's parental rights.[2] Respondent was

---

[1] The lawyer-guardian ad litem (LGAL) and the legal father contend that this Court lacks jurisdiction under MCR 3.973(H) because the order appealed from did not terminate respondent's parental rights. However, MCR 3.993(A) authorizes an appeal as of right from "any order removing a child from a parent's care and custody." The July 8, 2021 order specified that "[Department of Health and Human Services] shall remove the children from the care of the natural mother and place with the legal father." Thus, this Court has jurisdiction over this appeal.

[2] A few weeks before the petition was filed, respondent filed for divorce from the legal father. The divorce was final in April 2016, but custody issues continue to arise in the domestic matter.

granted interim legal and physical custody of the children, while the legal father's visitation was suspended without objection. Because respondent secured interim full legal and physical custody in the domestic matter, DHHS withdrew its petition. A jury found the legal father not guilty of all criminal charges in 2016, at which time he began reunification efforts with the children.

From 2016 through 2019, there were several referrals to CPS. The children made numerous allegations of sexual abuse and molestation against the legal father. There were also allegations of physical abuse and improper supervision against respondent. None of the allegations against the legal father were substantiated, but the allegations of improper supervision against respondent were substantiated.

In January 2020, the LGAL filed a petition for jurisdiction pursuant to MCL 712A.2(b)(1). The allegations included improper supervision, failure to comply with referrals and recommendations, failure to follow through on recommendations for the children, and use of physical discipline. It was also alleged that respondent denied the legal father his right to exercise his parenting time since November 2019. The parties agreed that DHHS would assume care and supervision of the children while they remained in respondent's custody pursuant to the custody order in the domestic matter.[3] Individual parent-agency agreements were established for respondent and the legal father. The agreements included psychological assessments for the parents and children, supported parenting time for the legal father, therapy for the parents and children, and in-home services.

In May 2021, the trial court expanded the legal father's parenting time to unsupervised overnight weekend visitation as provided in the custody order in the domestic matter. And respondent was ordered to not interfere with the parenting time. The trial court's involvement was limited to aiding the children in transitioning to the parenting time schedule established in the domestic matter. Because respondent's attorney made statements regarding the children's adjustment to visitation that were not reported to the case worker, therapist, or the LGAL, the trial court ordered that the children be afforded an opportunity to meet with a professional at each parenting time exchange to address any concerns that the children may have.

The children completed their first unsupervised overnight weekend visitation with the legal father in June 2021. The case worker met with the children before they were returned to respondent. The children did not raise any issues with the visit. However, on the following day, ST told the therapist that his legal father "did it again." When the therapist questioned ST further, ST simply stated that his father did "the same thing as last time." The therapist reported that ST did not exhibit any signs of trauma in his follow up visits. A CARE House interview was conducted. ST made disclosures during the interview that were identical to the 2019 disclosures that were previously unsubstantiated. Respondent was instructed that the children's unsupervised weekend visitation with the legal father would proceed as scheduled from July 2, 2021 to July 6, 2021.

---

[3] The legal father had supervised parenting time pursuant to the custody order.

## B. MOTION TO CHANGE PLACEMENT

Respondent failed to bring the children for their scheduled unsupervised weekend visitation with the legal father in July 2021. On July 6, 2021, the LGAL filed a motion to change placement of the children to the legal father's care and custody. A hearing was conducted on July 8, 2021. Respondent failed to appear for the hearing. However, her current attorney was present and was afforded an opportunity to cross-examine the therapist and DHHS workers. No witnesses were called to testify on behalf of respondent. The trial court found that respondent had caused emotional harm to the children by interfering with the legal father's parenting time and reunification efforts. In particular, the trial court concluded that respondent repeatedly coached the children to make false allegations of sexual abuse that were not corroborated by any evidence. The trial court released the children to the care and custody of the legal father under the supervision of DHHS. Respondent was granted supervised visitation.

## C. SUBSEQUENT EVENTS

Because respondent and the children could not be located, on July 13, 2021, the trial court entered orders to take the children into custody and respondent was placed on absent without legal permission status. On July 27, 2021, while respondent's whereabouts were still unknown, her attorney filed a claim of appeal from the trial court's July 8, 2021, order changing placement of the children.

Respondent was located in Florida on August 1, 2021. The children were taken into police custody and released to the care and custody of the legal father with DHHS supervision. On August 12, 2021, the trial court ordered that the children would remain with the legal father under the care and supervision of DHHS. Respondent's parenting time was limited to supervised visitation.

On September 15, 2021, the trial court placed the children in the custody of the legal father "consistent with the custody order in [the domestic matter]." The order noted that the legal father had secured sole physical and legal custody of the children in the domestic matter, that respondent's parenting time had been suspended in the domestic matter, and that criminal charges were pending against respondent because she absconded with the children.[4] The order further stated that the trial court's jurisdiction was terminated.

On October 20, 2021, the trial court suspended respondent's parenting time. Respondent was ordered to engage in therapy for a minimum of one month. Upon completion of the therapy, respondent was able to resume her parenting time once weekly by recorded Zoom sessions

---

[4] Respondent was charged with felony kidnapping pursuant to MCL 750.350a (custodial interference).

supervised by the therapist. These parenting time conditions were ordered to continue until completion of the criminal matter,[5] at which time objections to the custody order would be addressed in the domestic matter.

The register of actions for each of the children includes an October 25, 2021, entry stating that each case was discharged on September 14, 2021, and that all future hearings should be scheduled in the domestic matter.

## II. ANALYSIS

Respondent's appeal focuses on alleged procedural deficiencies and evidentiary errors that occurred at the July 8, 2021, hearing. Respondent argues that the trial court abused its discretion ordering that the children be placed with the legal father following the alleged procedurally-defective hearing. We find this appeal moot.

"The question of mootness is a threshold issue that a court must address before it reaches the substantive issues of a case." *In re Tchakarova*, 328 Mich App 172, 178; 936 NW2d 863 (2019). "An issue is moot if an event has occurred that renders it impossible for the court, if it should decide in favor of the party, to grant relief." *City of Jackson v Thompson-McCully Co, LLC*, 239 Mich App 482, 493; 608 NW2d 531 (2000) (citation omitted). A moot case "is one which seeks to get a judgment . . . upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy." *People v Richmond*, 486 Mich 29, 34-35, 782 NW2d 187 (2010) (quotation marks and citation omitted). "[R]eviewing a moot question would be a purposeless proceeding." *Id*. at 35 (quotation marks and citation omitted). Thus, as a general rule, we will not review a moot issue. *Id*.

Even if an issue is moot, it is justiciable if the issue is: (1) one of public significance,[6] (2) likely to recur, and (3) likely to evade judicial review. *Gleason v Kincaid*, 323 Mich App 308, 315; 917 NW2d 685 (2018). However, our appellate courts have declined to apply this exception "when the party seeking review of an issue on appeal has rendered the issue moot by that party's own volitional conduct and the party could have avoided mooting the issue by seeking an appeal." *Richmond*, 486 Mich at 37. That is precisely what happened here. Respondent rendered the issues moot when she intentionally violated the trial court's orders[7] and absconded with her children to Florida. Respondent could have obtained judicial review by filing an immediate claim of appeal pursuant to MCR 3.993(A)(1). But her voluntary actions resulted in a criminal charge, which led to an award of interim sole legal and physical custody to the legal father in the domestic matter. Thereafter, the trial court ended its jurisdiction in this case. Now, all of the custody issues are being

---

[5] As of the date of this opinion, the criminal matter is still pending.

[6] Respondent argues that her procedural due process rights were violated. A due process violation is an issue of public significance. See *In re Tchakarova*, 328 Mich App 172, 180-181; 936 NW2d 863 (2019).

[7] This includes the May 25, 2021 order granting the legal father unsupervised parenting time and directing respondent to "not interfere with the father exercising his parenting time."

addressed in the domestic matter. We decline to address an otherwise moot issue that respondent rendered moot by her own conduct.[8]

Dismissed as moot.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Sima G. Patel

---

[8] On January 7, 2022, respondent filed a motion to expand the record to include the surveillance video which was on a thumb drive. This Court granted respondent's motion on January 20, 2022. We have reviewed the entire thumb drive and have found no evidence that would persuade this Court to change its findings or conclusions.